42 KENTUCKY REPORTS. [VOL. 91.

Newport News & Mississippi Valley Company v. Dentzel's Adm'r.

CASE 6—PETITION ORDINARY—DECEMBER 13.

# Newport News & Mississippi Valley Company v. Dentzel's Adm'r.

### APPEAL FROM GRAYSON CIRCUIT COURT.

1. DEATH OF RAILROAD EMPLOYE FROM NEGLIGENCE OF COMPANY— SURVIVOR OF ACTION FOR SUFFERING.—Where an employe of a railroad company is injured by the neglect of the company, and there is an appreciable interval of suffering between the time of the injury and death, he may recover for the suffering; and upon his death the right of action, by virtue of chapter 10 of the General Statutes, survives to his personal representative, although he may have left neither widow nor child.

2. THE QUESTION OF NEGLIGENCE IS A MIXED ONE OF LAW AND FACT. If disputed, it is the province of the jury to find the degree. If undisputed, the court determines the question. If it be questionable where this duty rests in a particular case, it should be left to the jury.

   The defendant was not prejudiced in this case by leaving the character of the negligence to the jury, because the court would have been bound upon the facts of the case to have found it to have been willful.

3. WILLFUL NEGLIGENCE.—In descending a grade a heavily-loaded freight train was in some way broken into two sections. The engineer, becoming apprised of the fact, put on additional steam and ran ahead with the front section to avoid a collision. He repeatedly gave the signal for a stop of the rear section, and when he finally checked the front section, supposing that those in charge of the rear section had stopped it, a collision occurred, resulting in the injury of the brakeman on the front section. The brakeman on the rear section was in the caboose with the conductor, and neither paid any attention to the repeated alarms. *Held*—That both the brakeman and the conductor were guilty of willful negligence.

4. FELLOW SERVANTS.—While the master is not liable unless the negligent servant was the superior of the one injured, yet, as the conductor in this case, who was a party to the neglect, was the superior of the injured brakeman, the rule of *respondeat superior* applies, and the company is liable.

5. EXCESSIVE VERDICT.—As the jury had the right not only to award compensation, but also to award such exemplary damages as they saw fit, the court can not say that a verdict for seven thousand five hun-

VOL. 91.] SEPTEMBER TERM, 1890. 43

Newport News & Mississippi Valley Company v. Dentzel's Adm'r.

dred dollars is so excessive as to authorize a reversal, as no person can tell the extent of the mental and physical suffering of the decedent during the nine hours which elapsed from the time of injury until death.

HOLMES CUMMINS, G. W. STONE, P. H. DARBY FOR APPEL-
LANT.

1. There can be no recovery under section 3 of chapter 57, General Statutes, where the decedent left no widow or child. (Jordan's Adm'r v. Railroad Co., 89 Ky., 40; Henderson v. Railroad Co., 86 Ky., 389; Henning v. Leather Co., 11 Ky. Law Rep., 544.)

And that section applies, notwithstanding John Dentzel lived nine hours after he received the injury. (Cincinnati, &c., R'y Co. v. Adams' Adm'r, 11 Ky. Law Rep., 834.)

2. The trial judge himself should have determined whether, on the conceded facts, appellant's neglect was willful or of lesser degree. It was error to leave the question to the jury. (Witty v. Railroad Co., 83 Ky., 21; Empire, &c., Co. v. McIntosh, 82 Ky., 557; Dolfinger v. Fishback, 12 Bush, 478; Railroad Co. v. Letcher, 5 Ky. Law Rep., 156; Canal Co. v. Murphy, 9 Bush, 529; Chiles v. Drake, 2 Met., 147.)

3. The verdict was excessive. Appellee, for compensation, was limited to nine hours' wages. As the decedent was unconscious, there could have been no pain or suffering.

Punitive damages are graduated by the intent of the party committing the wrong. (Parker v. Jenkins, 3 Bush, 587; Kron v. Schoonmaker, 3 Barb., 647; James v. Campbell, 5 Car. & Payne, 372; Railroad Co. v. Lockwood, 17 Wall., 357; Sedgwick on Measure of Damages, 7th ed., vol. 2, 317-333; Sutherland on Damages, pp. 748-9; Maxwell v. Kennedy, 50 Wis., 648-9; Meidel v. Anthis, 71 Ill., 241; Freeze v. Tripp, 70 Ill., 496; Gaussly v. Perkins, 30 Mich., 492; Clarke v. Newsom, 1 Exch., 131; Becker v. Dupree, 75 Ill., 167.)

Nor will such damages be awarded in cases of mere mistake. (Walker v. Fuller, 29 Ark., 448; Jackson v. Schmidt, 14 La. Ann., 818; Selden v. Cushman, 20 Cal., 56.)

4. The contributing fault of plaintiff may be shown in avoidance, except where the action is under section 3 of chapter 57, General Statutes. (Owen, &c., v. Railroad Co., 10 Ky. Law Rep., 554.)

5. The evidence does not establish willful neglect. (Railroad Co. v. Roberts, 10 Ky. Law Rep., 528; Railroad Co. v. Brice, 84 Ky., 298; Railroad Co. v. Connelly, 9 Ky. Law Rep., 439.)

6. For the neglect of a fellow-brakeman appellant could not be held liable. (Fort Hill, &c., Co. v. Orme, 8 Ky. Law Rep., 70; Casey's Adm'r v. Railroad Co., 8 Ky. Law Rep., 439.)

7. If punitive damages are not recoverable under the first section of chapter 57, General Statutes, neither can they be recovered under chapter

Newport News & Mississippi Valley Company v. Dentzel's Adm'r.

10. (Railroad Co. v. Case's Adm'r, 9 Bush, 737; Railroad Co. v. Sickings, 5 Bush, 10; Railroad Co. v. Fox, 11 Bush, 495; Jacob v. Railroad Co., 10 Bush, 273.)

8. This was a judgment for injury to the person, and, under the statute, should not bear interest. (Adams v. Rankin, 1 Duv., 58.)

MATT. O'DOHERTY for appellee.

1. Counsel for appellant will not be allowed to withdraw the confession of negligence made before judgment in the court below.

2. The fact that plaintiff's intestate left neither widow nor child constitutes no defense to an action under chapter 10 of the General Statutes (Hansford's Adm'r v. Payne, 11 Bush, 383.)

3. The fact that *willful* negligence is alleged does not show that the action is under section 3 of chapter 57, General Statutes. The allegation of willful negligence includes all inferior grades. (L., C. & L. R. Co. v Case's Adm'r, 9 Bush, 733.)

Besides, willful negligence is actionable as well where it results in injuries or suffering as where it causes immediate loss of life.

4. The answer by confessing every degree of neglect less than willful neglect confessed gross neglect, and as gross neglect authorizes a recovery of exemplary damages, appellant can not complain that such damages have been given. (Railroad Co. v. Herrick, 13 Bush, 127; Railroad Co. v. Dills, 4 Bush, 595.)

5. A servant may recover of the master for injuries resulting from the *gross* negligence of a fellow-servant. (L. & N. R. Co. v. Robinson, 4 Bush, 509.)

6. Whether the evidence sustains the charge of willful negligence, it is the peculiar province of the jury to determine. (Railroad Co. v. Mahoney's Adm'r, 7 Bush, 337.)

7. Appellee had the right to have the value of the decedent's power to earn money estimated by the jury in fixing compensatory damages. (Railroad Co. v. Case's Adm'r, 9 Bush, 736; Railroad Co. v. Mahoney's Adm'r, 7 Bush, 238.)

8. The court will not control the discretion of the jury unless the damages be so great as to strike the mind at first blush as having been superinduced by passion or prejudice. (Letten v. Young, 2 Met., 560.)

9. Interest on the judgment was authorized by act of March 1, 1888 (Public Acts 1887-8, p. 28.)

CHIEF JUSTICE HOLT delivered the opinion of the court.

John Dentzel, while in the employ of the appellant, the Newport News and Mississippi Valley Company, as a brakeman, and when engaged in his duties as such

employe, received injuries which caused his death nine hours after their infliction. A heavily loaded freight train of the appellant, of about seventeen cars, stopped when upon an ascending grade. In endeavoring to move it, a draw-head was torn from its place, but the train soon started again, and, upon doing so, the deceased resumed his proper place as a brakeman upon the front part of the train, while the only other brakeman upon the train, and whose place was upon the rear part of it, went into the caboose, which was the rear car, with the conductor. The train, in some way not disclosed, was soon thereafter broken in two sections, and the engineer, becoming apprised of it, put on additional steam and ran ahead with the front section, the deceased being thereon, to avoid a collision. As soon as he discovered that the train was broken, he whistled for the rear section to put on the brakes, and the evidence shows if it had been done a stop would have been had within a very short distance, say the length of the train. The front section ran on for about two miles and a half, passing one station in the meantime, the engineer repeatedly giving the whistle alarm for a stop of the rear section, so often, indeed, that it alarmed the people living along the road. Supposing that those upon it had stopped it, he then checked the front section, and almost as soon as he did so the rear section ran into it, and in the wreck the deceased was injured. The testimony shows that the rear brakeman, instead of being at his post, was in the caboose from the time when he went into it, as already stated, until the collision occurred.

While the appellant is not liable to an employe

for injury arising from the neglect of a co-laborer, not superior to the one injured, yet, in this instance, the conductor, who was in charge of the train, was a party to the neglect. He not only permitted it upon the part of the rear brakeman, but also failed to give attention otherwise to the conduct of the train. The rule of *respondeat superior*, therefore, applies, and it is evident the neglect was willful. It was an intentional failure upon the part of the one in charge of the train, and who represented the company, to perform a known and manifest duty, important to the safety of the deceased.

The averments of the petition show that this action by the administrator of the deceased was not brought under section 3 of chapter 57 of the General Statutes, which authorizes suit for the recovery of punitive damages for *the loss of life* against the person or company or corporation through whose willful neglect it occurs. Such an action can not be maintained in a case like this one, as this court has repeatedly held in Henderson v. Ky. Cent. R. Co., 86 Ky., 389 ; Jordan's Adm'r v. Cincinnati, &c., R. Co., 89 Ky., 40, and other cases, because the deceased left neither wife nor child. But it was brought, alleging that the injury occurred through the willful neglect of those controlling the train for the company, and to recover such damages as would have compensated the deceased for the loss of time and his physical and mental suffering from the time of the happening of the injury up to his death, as well as such exemplary damages as the jury might see proper to award under all the circumstances of the case, not exceeding the amount claimed in the

petition. The demurrer to the third paragraph of the answer, which set up as a defense to any recovery that the deceased left neither wife nor child, was, therefore, properly sustained.

By the common law no right of action accrued to any one for personal injuries resulting in instant death; but if there was an appreciable interval of suffering, a right of action for it did accrue to the person injured; and this right of action survives to his personal representative by chapter 10 of the General Statutes, which provides: "No right of action for personal injury, or injury to real or personal estate, shall cease or die with the person injuring or the person injured, except actions for assault and battery, slander, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury; but for any injury other than those excepted, an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action on contract."

The statute authorizing an action for loss of life through willful negligence was intended not to restrict but to enlarge the common law; to give a right of action where none existed before, and not to cut off one which already existed. (Hansford's Adm'r v. Payne & Co., 11 Bush, 380.)

It has been suggested, in the consideration of the case, that if the personal representative of an injured employe, who does not die immediately, and who leaves neither wife nor child, can sue for the loss of time and the suffering of the deceased between the

time of the infliction of the injury and his death,
then this will, in effect, defeat the construction which
has been given to the statute ; and that although, by
reason of having no wife or child, no action can be
maintained for the loss of life, yet the jury will be
apt to consider it in estimating the damages, and ren-
der a verdict accordingly.    This is, however, suppos-
ing that the jury will not regard their oaths, and will
disregard the instruction of the court.    The life of a
person may, under the tables of mortality, be esti-
mated in value.    When the jury are informed of his
age and his ability to labor, they can fix its value ;
and certainly they will not return damages for its loss
when told, as they were in this case, that they can not
do so.

As the law now stands in this State, the personal
representative of any person who was not in the em-
ployment of a railroad company may sue for the loss
of his life through the neglect of the company, what-
ever be the degree of the neglect, and just as the
person himself might have done for the injury if
death had not ensued.    This is by virtue of the first
section of chapter 57 of the General Statutes, and by
the third section a recovery may be had for the loss
of life of any person, whether a railroad employe or
not, if he left a wife or child, and it was caused by
the *willful* neglect of a person, company or corpora-
tion ; and the recovery may include punitive damages.
But this statute gives a remedy for *the loss of life*,
and it does not abrogate the right, which existed at
common law, of one who is injured, whether the in-
jury be inflicted by a railroad company in whose

employ he may be or not, and who does not die immediately, of either suing before his death for the loss of time and his suffering, or of his personal representative to do so after his death.

In this case, after the testimony for the appellee was closed, the appellant declined to offer any, and by its counsel announced in open court that it conceded its liability upon the facts shown, and the only question was the measure of recovery. This was, in effect, a withdrawal of its answer; it was a confession of liability.

It is now urged as grounds for a reversal, first, that the court improperly submitted to the jury the question, whether the appellant had been guilty of willful neglect; and, second, that the verdict is excessive. It is said that the answer admitted the facts, and, therefore, the court should have determined whether they showed willful neglect, and that this question should not have been left to the jury. The question of negligence is a mixed one of law and fact. If disputed, it is the province of the jury to find the degree; if undisputed, the court determines it. (L. & N. R. Co. v. Collins, 2 Duvall, 114.) If it be questionable in a case where this duty rests, it should be left to the jury. In this case, however, the appellant was not prejudiced by leaving the character of the negligence to the jury, because, if the court had determined it, it would have been bound, upon the facts of the case, to have found it to have been willful.

We do not feel at liberty to disturb the verdict upon the score that it is excessive. The deceased, it

is true, was unconscious from the time of the accident until his death. But no person can tell the extent of his physical and mental suffering; it was voiceless, save in the way of moan. It was the province of the jury to fix the damages. They had a right not only to find damages by way of compensation for the suffering from the time of the infliction of the injury until death, but to also award such exemplary damages as, under the circumstances, they saw fit. Having the right to award both, we can not undertake to say that the verdict is so excessive as to authorize a reversal.

The judgment is, therefore, affirmed.