Case 52—ACTION BY THE GUARDIAN OF ONIE AND NONIE REDMOND AGAINST J. E. POTTER AND OTHERS TO COLLECT RENT MONEY FOR HIS WARDS, OCT. 3.

## Potter, &c. v. Redmond's Guardian.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for Plaintiff. Defendants appeal. Affirmed.

1. Homestead—Rights of Surviving Infant Children—Statutes. Ky. St. 1903, Sec. 1707, providing that the homestead shall be for the use of the widow, and the unmarried infant children of the deceased husband shall be entitled to the joint occupancy with her until the youngest unmarried child arrives at full age, gives to the infant children of a deceased husband the joint occupancy, with the widow, of the homestead, and the fact that the infant children were not living with the father at his death does not deprive them of their statutory right.

2. Guardian and Ward—Sureties—Liability—A guardian of two of six infant children of a decedent rented the homestead and collected the rent. The four infants asserted no claim to it, and their right was barred by limitation. The guardian made no settlement for the rent collected. Held that, as the children were joint tenants, the renting of the homestead by the guard-

Potter,  &c.  v.  Redmond's  Guardian.

ian was not wrongful, he was liable to account for the rent received, and on his failure to do so the sureties on his bond were liable.

3.  Judgment—Res Judicata—An order striking an action from the docket without trial, being in effect an order dismissing the case without prejudice, is no bar to a subsequent action.

BRADSHAW and BRADSHAW and CRICE and ROSS, attorneys for appellants.

### POINTS AND AUTHORITIES.

1.  The defendant should have been credited by payments made to the amount of forty-five dollars and thirty cents ($45.30) by the guardian on money and supplies to Lavisa Daniels, grandmother and custodian of said two wards, said money and supplies being supplied for their support and maintainance between the date of the last settlement, June, 1891, and the death of F. M. Howser in 1896

2.  That the guardian only collected two hundred dollars for rent ($200.00).

3.  That after the death of the widow, the mother and stepmother of Redmond's infant children, and the abandonment of the homestead by all the infant children, the four infant children of J. Q. Redmond, by his first wife, were as much entitled to the rents of their father's homestead as the infant children of the second wife, the whole of which rent the guardian wrongfully and erroneously charged to himself as assets of his wards' estate when they were only entitled to one-third of same, and his wrongful and erroneous act in so doing created no liability at the time nor since against the appellant as sureties for the amounts so erroneously charged to himself as guardian.

4.  That the repeated suits brought on the same cause of action, and the action of the court in striking the case from the docket in October, 1902, works a bar to this cause of action. (Ky. Stats., sec. 1707; Smith v. Bland, 7 B. M., 21; Shields, etc. v. Smith, 8 B., 602; Wilson, Guardian v. Ulsets Adm'r, 12 B., 213; Neeley, etc. v. Merret, etc., 9 B., 346; Alsop's Creds. &c. v. Barbee and Wife, 14 B. M., 522; Lloyd, etc. v. Lloyd, 82 Ky., 521; Little's Gd'n Woodward, etc., 14 B., 585.)

D.  G.  PARK attorney for appellees.

### POINTS AND AUTHORITIES CITED.

1.  No Jurisdiction of the Appeal. (20 R., 185-6; Hale v. Groghan, 104 Ky., 217; Wood v. Taylor.

2. Only the Infants who were actual members of the family residing with him at the time of the fathers death are interested in the homestead. (86 Ky., 688, 690; Alexander's Guardians v. Alexander's Admrs.)

Waples on Homestead and Exemption. (Page 650 sub-sec. 4; 123-4-5-6; Farrow v. Farrow, 81 Tenn., 120, Ky. Statute, sec. 1707, 9 Am. & Eng. Enc. of Law, 448 (1 Ed.), 12 Bush, 404, 407; Jones v. Crawford, 27 Ky. Law Rep., 191; Mallory's Admr . v. Mallory's Admrs., 92 Ky., 316; Freeman on Contenancy and Partition, (2 Ed.), Sec. 60; Wilson v. Parson's Admr., 106 Ky., 385; Jones v. Green, 26 Ky. Law Rep., 1191.

3. Older set of children barred by time. (Ky. Statute, Sec. 2515).

4. Relief Against Guardian's Settlements Barred by Limitations. (McChord v. Caldwell, 96 Ky., 617; Richardson v. Chanslor &c., 103 Ky., 425; Elam v. Hayden, 51 S. W., 455).

OPINION BY CHIEF JUSTICE HOBSON—Affirming.

F. M. Houser qualified as guardian for Onie and Nonie Redmon on September 4 1884. He renewed his bond as guardian on July 14, 1891, with J. E. Potter and E. R. Bradshaw as his sureties; the surety in the original bond having died. F. M. Houser died in the year 1896, and W. H. Donaway was appointed as guardian for Onie and Nonie Redmon in his stead. This suit was subsequently filed by the wards to recover of the sureties of the former guardian an alleged balance in his hands. J. Q. Redmon, the father of the infants, owned at his death a homestead. He had been married twice. By his first wife he had four children, who were infants at his death, and by his second wife he had two children, Onie and Nonie, both then infants of tender years. The second wife, who was their mother, survived her husband, but died shortly afterwards. At the father's death the four children by his first wife were not living with him, but were living with their mother's kindred. His widow continued to occupy the homestead with her two children until her death. The guardian, Houser, after her death, collected $200 for the rent of the homestead; he having taken charge of the place after the mother's death and rented it out as guardian.

He did not qualify as guardian of the other four children, and credited all of the rent to his wards in his settlements. This money, with its interest, is the chief ground of contention here.

Section 1707, Ky. St. 1903, provides: "The homestead shall be for the use of the widow so long as she occupies the same, and the unmarried infant children of the husband shall be entitled to a joint occupancy with her until the youngest unmarried child arrives at full age. But the termination of the widow's occupancy shall not affect the right of the children." All six of the infant children of the husband were entitled to a joint occupancy with the widow, and the termination of her occupancy did not affect the right of the children. The fact that four of the infant children were not living with the father at his death is immaterial. The purpose of the statute is to create an asylum for the unmarried infant children of the husband, and they are entitled to this asylum under the statute, whether they reside with the father at his death or not. Being infants, they are not chargeable with laches, and did not lose their rights by not asserting them at the time of abandoning the home. But, while this is so, the guardian found his wards in possession. He took charge of them and the property. He received the property as guardian. He rented it out as such and collected the rents, charging himself with it in his settlements. The other four infants asserted no claim for it. The time in which they might have asserted such claim has long since passed, and, while the guardian might show that he had accounted to the co-tenants for the rent, as between him and his wards, he cannot deny their title to the money which he received as their guardian when he has not accounted to any one else for it and is under no liability to any one else.

But it is earnestly insisted for the sureties that they are only responsible for the estate of the wards in the hands of the guardian, that they are not responsible

for any other money which he got into his hands, and
that, if they were not responsible for the rent money
when it came into his hands, they did not become so
by lapse of time or by the other children losing their
right to sue for it. There would be great force in this,
but for the fact that the six infant children were joint
tenants of the homestead. A joint tenant may law-
fully rent out the common property and collect the
rent. When he so collects the rent, the money which
he collects is his, although he may be under liability to
account to his co-tenants, if on the whole he receive
more than his share of the rent. But this liability to
an accounting is purely a personal liability. The
money whch he collects is his, and he may do as he
pleases with it. When sued for an accounting he may
show that on the whole he got no more than his fair
share of the rents. If Onie and Nonie Redmon had
been of age, and had rented out the common property
and collected the $200, the money would have been
theirs. When the guardian rented it out, the money
which he collected was the money of his wards. If
the other infants sued for an accounting and he had
to account to them, he might be credited for anything
he had paid on this liability, but it would have been
a liability paid as guardan. He was not a wrongdoer
in renting out the property, nor was he in any sense a
trustee for the other four children. He received the
money for his wards and his sureties were re-
sponsible for it. As he has not been made to account
to the other four infants for any part of the rent, the
court properly held him liable to his wards.

The plea in bar cannot be sustained. An order
striking an action from the docket without trial is in
effect an order dismissing the case without prejudice.
Wilson v. De Loach, 123 Ky. 393, 29 Ky. Law Rep. 823,
96 S. W. 514. The action in the quarterly court was
dismissed without prejudice at plaintiff's cost.

As to the additional credit claimed of $45, and as
to the claim that more money was charged than the

guardian received, we see no reason for disturbing the chancellor's conclusion on the facts.

Judgment affirmed.

Case 53—ACTION BY ALLIE DOWNS AGAINST THE ADMIN-
ISTRATOR OF JOHN DOWNS DECEASED FOR THE SET-
TLEMENT OF THE ESTATE AND TO SUBJECT IT TO THE
SATISFACTION OF A JUDGMENT IN HER FAVOR
AGAINST DECEASED.—Oct. 4.